## Philadelphia and Reading Railroad Company *versus* Ramsey.

When a common carrier receives express goods, the question whether the carrier contracts to carry said goods to their destination, or only to deliver them safely to the next carrier at the point nearest or most convenient to the destination, is one of fact for the jury, dependent upon the circumstances.

March 19th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Schuylkill county :* Of January Term 1879, No. 80.

Assumpsit by William Ramsey against the Philadelphia and Reading Railroad Company, to recover damages for the loss of a package of clothing, alleged to have occurred through the failure of the defendants to safely carry to and deliver the said package at the place mentioned in the address thereon.

It appeared that on July 16th 1873, the plaintiff took a package of clothing to the express office of the defendants' company at Mahanoy City, Pennsylvania. The package was made up in a paper and addressed to the plaintiff's wife at Rehoboth, Delaware. The address was on the package when brought to the office and delivered to the express agent.

The plaintiff testified : " In the month of July 1873, I took a package of clothing, addressed to my wife at Rehoboth, Delaware, to the Philadelphia and Reading Railroad Company's office. That was the only address there was on it. I handed it to Mr. Hess, and asked him to please send it to Mrs. Ramsey, at Rehoboth ; and I wanted to pay the express charges, but he said he did not know what they would be. I said I wished he would find out, as I did not know how Mrs. Ramsey would be off for money, and I did not know as she would be there when the package arrived. I asked if there was any way he could get it down, and he said ' Yes, we can send it on and collect back to this office, and I will do that, if you will pay me promptly the express charges when I get the return,' and I said ' Yes, I would do that.' Then I left the package there. Thomas Hess was the name of the express agent."

The original waybill was produced, whereby it appeared that sometime after the delivery of the package, Ramsey had paid forty cents charges, which were the rates only to Birdsboro, at which place the defendant delivered the package to the Wilmington and Reading Railroad, which was the usual connecting route to Rehoboth.

In the general charge, the court, Pershing, P. J., inter alia, said :—

" The question for you is, what was the contract ? It is a question of contract entirely. Did the Reading Railroad Company receive these goods and undertake to convey them to Rehoboth ?

And did they fail to deliver them at that place? If they did, then the company would be liable. If the contract was simply to deliver them at Birdsboro, and there transfer them to a connecting route, and they were lost afterwards upon the connecting route, then the company would not be liable. In some of the cases it is held that the amount of charges paid is evidence for the consideration of the jury. Thus, in the case of a company whose route does not extend to the point of destination of the goods, but it is necessary to forward them by a connecting route or routes, and it receives the goods for transportation, and takes pay for the whole distance, it is evidence that they undertook to convey them over the connecting route, and of liability for any loss that occurred after they left their own route. The evidence here is that Mr. Ramsey offered to pay at the time, but the agent could not tell him what the express charges would be. It was some time after this that the forty cents were paid, to which your attention has been called by the testimony."

The defendant submitted the following points, to which are appended the answers of the court:

1. If the jury believe the evidence of the defendants' witnesses, the acceptance and undertaking of defendants to deliver the package safely to plaintiff at the end of the route has been fully complied with.

Ans. "We think that it is a question of fact entirely for your consideration what the contract was. You will determine by your verdict whether the contract extended to Rehoboth, or to the point on the Reading road at Birdsboro, where the goods were transferred."

2. If the jury believe the evidence that the defendants carried the package to the terminus of their route at Birdsboro, and there delivered it in a safe condition to the next connecting carrier in the usual course of business, the defendants' responsibility there ended, and the verdict of the jury should be for the defendants.

Ans. "That is just as you determine from the evidence what the contract was; if it was a contract to carry to Birdsboro, then there could be no liability here; but if you find the contract was to deliver the package at Rehoboth, then the defendants would be responsible for the loss."

3. The defendants' responsibility can only be for injury or loss occurring by their own negligence or that of their employees, and the defendants are not responsible for the loss of the package while in the hands of another carrier.

Ans. "We give the same answer to that; it depends upon whether they made a contract which would include a connecting route."

4. If the jury are satisfied from the evidence that the loss of the package occurred after it passed from the hands of the

defendants, then the verdict of the jury should be for the defendants.

Ans. "Not unless you find that their contract terminated at Birdsboro."

5. The defendants were common carriers to the end of their own route only, and beyond that held the relation to the plaintiff of forwarders only, and as such, having forwarded the package beyond their lines at the point nearest and most convenient to destination, in the usual course of business, being in good condition when so forwarded, the plaintiff cannot recover in this action.

Ans. "We affirm this point if you find that the contract between the company and Mr. Ramsey was that the Reading Railroad Company was simply to forward them; that is, that the contract did not extend beyond Birdsboro or the terminus of their own road, and that from that point they were simply forwarders of the goods through the agency of the other road. If you find that the contract was to convey the goods to Rehoboth then this point would not apply."

Verdict for plaintiff for $178.20. After judgment defendant took this writ and assigned for error the answers to the foregoing points.

*James Ellis*, for plaintiff in error.—The proof must be clear that a carrier has bound himself to transport goods beyond the terminus of his own route: Pennsylvania Railroad Co. *v.* Berry, 18 P. F. Smith 277 ; Baltimore & Philadelphia Steamship Co. *v.* Brown, 4 P. F. Smith 77. The mere acceptance of goods prepaid to a certain point, does not imply that the carrier assumes any duty to transport beyond the end of its own route and delivery to the next carrier: 2 Redfield American Railway Cases 321 ; Pennsylvania Railroad Co. *v.* Berry, *supra ;* American Express Co. *v.* Bank, 19 P. F. Smith 394 ; Mullarkey *v.* Railroad Co., 9 Phila. R. 114 ; Union Express Co. *v.* Shoop, 4 Norris 325 ; Camden and Amboy Railroad Co. *v.* Forsyth, 11 P. F. Smith 81.

*Hughes & Farquhar*, for defendant in error.—The courts of this country have frequently held the carrier liable beyond the limits of his own route upon the ground of a special undertaking, either expressed or implied, but whether any such contract exists, is regarded as a matter to be determined from all the facts and attending circumstances of the case, and will more generally be *an inference for the jury*, than the court, unless it depends upon the effect of written stipulations, and even then will often be affected, more or less, by attending facts and circumstances : 2 Redfield on Railways 116 ; Chouteaux *v.* Leech & Co., 6 Harris 224 ; Baltimore and Philadelphia Steamship Co. *v.* Brown, 4 P. F. Smith 77.

[Philadelphia and Reading Railroad Co. *v.* Ramsey.]

And there was sufficient evidence here on the question of the contract to justify the submission : American Steamship Co. *v.* Bryan, 2 Norris 448.

The judgment of the Supreme Court was entered, May 5th 1879.

PER CURIAM.—We think there was evidence sufficiently clear to submit to the jury that the plaintiffs in error undertook to carry the package intrusted to them beyond the terminus of their own line, and so became responsible for its safe delivery at Rehoboth. The agent of the company told the defendant that " they could send it on and collect back.to this office, and I will do that if you will pay me promptly the express charges when I get the return": Chouteaux *v.* Leech, 6 Harris 224 ; Baltimore and Philadelphia Steamboat Co. *v.* Brown, 4 P. F. Smith 77. There was no error then, in the answers of the learned court to the points presented to him which have been assigned for error.

Judgment affirmed.